EVAN A. JENNESS (SBN 136822)
LAW OFFICES OF EVAN A. JENNESS
777 South Figueroa Street, Ste. 3800
Los Angeles, California 90017
Tel.: (213) 630-5088
Fax: (213) 683-1225
Email: evan@jennesslaw.com

BLAIR BERK (SBN 159087)
TARLOW & BERK
9119 Sunset Boulevard
Los Angeles, California 90069
Tel.: (310) 278-2111
Fax: (310) 550-7055
Email: blairberk@tarlowberk.com

Attorneys for Defendant
Scott Berkett

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 21-cr-292-MCS (jc) |
| Plaintiff, | REPLY MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF RENEWED MOTION FOR PRETRIAL RELEASE |
| v. | |
| SCOTT BERKETT, | |
| Defendant. | Date: Aug. 31, 2021 (1:00 p.m.) Courtroom: Roybal - 750 Judge: Hon. Jacqueline Chooljian |

Scott Berkett, through counsel, submits the accompanying reply memorandum of points and authorities in support of his renewed motion for pretrial release (CR 34), and in response to the prosecution's opposing brief (CR 40), and the updated report of the Pretrial Services Agency (August 25, 2021, supplementing reports of May 24 and June 7, 2021).

Dated: August 26, 2021        Respectfully submitted,

LAW OFFICES OF EVAN A. JENNESS

By:  /s/ *Evan A. Jenness*
        EVAN A. JENNESS

TARLOW & BERK

By:  /s/ *Blair Berk*
        BLAIR BERK

Attorneys for Defendant

## **TABLE OF CONTENTS**

REPLY MEMORANDUM OF POINTS AND AUTHORITIES ....................... 4

I.    INTRODUCTION ................................................................................. 4

II.   SCOTT BERKETT IS NOT A DANGER TO THE COMMUNITY ...... 5

III.  SCOTT BERKETT IS NOT A FLIGHT RISK ....................................... 7

IV.  SCOTT BERKETT SHOULD BE GRANTED BAIL UNDER THE BAIL REFORM ACT ............................................................................ 7

V.   SCOTT BERKETT HAS A KIDNEY DISEASE THAT PLACES HIM AT SERIOUS RISK FROM COVID 19 IN CUSTODY .............. 11

VI.  THE MOTION FOR DETENTION IS UNSOUND ON LEGAL GROUNDS ALONE .......................................................................... 12

CONCLUSION ............................................................................................. 14

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES**

## I. Introduction

Scott Berkett has been in custody at the M.D.C.-Los Angeles since his arrest on May 21, 2021, on murder for hire charges alleging he paid bitcoin to an internet organization purporting to provide hitman services, and then engaged with an undercover FBI agent posing as a hitman who induced him to wire transfer $1,000 via Western Union. There was never any actual danger to anyone as the internet organization was a complete sham. Nobody was harmed. As acknowledged by all, this is not a presumption case. The prosecution must prove dangerousness with "clear and convincing" evidence.

At a continued bail hearing on June 7, 2021, the prosecution relied on the nature of the charges and alleged evidence, and Mr. Berkett's acknowledged mental health issues, in seeking detention based on dangerousness and flight risk. The Court denied release on the grounds of dangerousness. CR 17. Pretrial Services (and previously, this Court) correctly concluded that any potential risk of flight could be mitigated by appropriate conditions of release.

The defense has now had an opportunity to assemble further information establishing that any risk of danger can be sufficiently mitigated, and release from custody on the strict alternate conditions recited by Pretrial Services in its updated report of August 25, 2021 (at pp. 3-5) is appropriate.

The Pretrial Services Agency has confirmed that (1) Scott Berkett has no criminal history, (2) Scott has had a stable residence with his family throughout his life, (3) Scott's parents are willing to post the equity in their home to secure a bond, and (4) Scott's parents have agreed to fully cooperate with Pretrial Services, which includes enforcing conditions precluding internet access by Scott, safeguarding their devices, acting as Scott's custodians while he is on pretrial release subject to home confinement in the family home, and agreeing to search conditions for enforcement

purposes. Scott's parents have also confirmed that one of them is usually at home insofar as his mother is a stay at home mother, and his father works from the home, and that they are willing to support Scott so that he need not return to work.

As reflected in the many letters submitted to the Court, Scott has a large and loving extended family with whom he has been in close contact throughout his life. CR 34, at Exh 1-10. As confirmed by his employer, Scott was gainfully employed prior to his arrest. *Id*. at Exh 6. Those who know him best describe his law-abiding, thoughtful, considerate and responsible nature. CR 34. He also suffers from a kidney condition which places him at heightened risk of serious adverse consequences were he to contract Covid-19 (a grave risk at the MDC-LA), as confirmed in a letter from his physician. CR 34, at Exh 5.

The defense submits that the prosecution has not met its burden of providing clear and convincing evidence that Scott Berkett would be a danger to the community insofar as it relies on nothing beyond the nature of the charges and alleged weight of the evidence, the least important factor for purposes of the defense's renewed motion for release on bond. While not recommending release, the Pretrial Services Agency's updated report recites strict alternate conditions of release that include home confinement, and preclude internet access. Such conditions are routinely imposed by courts and enforced by Pretrial Services, and are more than adequate to mitigate any conceivable risk in this case.

Alternatively, the defense seeks dismissal of the motion for detention on legal ground alone, as set forth in Part VI below. The motion is brought on the ground that the charged offense is a "crime of violence" and the case involves a flight risk. However, the charged statute, 18 U.S.C. § 1958(a), is not a crime of violence.

**II.    Scott Berkett is Not a Danger to the Community**

The conclusion that Scott Berkett is not a danger to the community is reinforced by the following undisputed facts:

1. He has no prior criminal record or history of violence;

2. He has a stable residence with his family;

3. His parents are willing to act as custodians, as confirmed by the Pretrial Services Agency;

4. He has had a stable, documented employment history;

5. Letters from his close family and friends attest to his good character, and support him in his request for release on bond (CR 34);

6. He is just 24 years old;

7. He has no history of substance abuse or excessive alcohol use;

8. He has *none* of the leading risk assessment factors identified for purposes of federal defendants' supervision (*e.g.*, a past history of violent crime, gang affiliation, a record of domestic violence, substance abuse issues, a history of noncompliance, low intelligence, unemployment, absence of family and/or a social network, unstable family situation). *See* Administrative Office of the U.S. Courts, Probation & Pretrial Services Office, *An Overview of the Federal Post Conviction Risk Assessment* (June 2018), p. 11, *et seq.*, at https://www.uscourts.gov/sites/default/files/overview_of_the_post_conviction_risk_assessment_0.pdf (a scientifically-based tool for assessing supervisees' risk levels);

10. The Court could require electronic monitoring to enforce an order of home confinement;

11. The Court could require the detailed conditions recited by Pretrial Services which are routinely imposed to preclude internet access; and

12. The Court could limit the duration of release initially permitted, and schedule a bail review hearing, for purposes of more closely monitoring Scott's compliance with the terms of release.

Letters submitted to the Court in support of Scott's release (CR 34) confirm he can be relied upon to comply with all conditions of release, and is worthy of the

Court's trust. They describe someone who is kind and generous, considerate and respectful of others, scrupulously honest, diligent and compliant with the rules, always there for family and friends, an Eagle Scout during his childhood and volunteer during college, and a person who routinely puts others ahead of himself. Those who know Scott best express their confidence he will pose no danger to the community, will appear in court as required, and can be trusted to comply with all directives of this Court, if released on bond.

### III. Scott Berkett is Not a Flight Risk

The Pretrial Services agency correctly concluded that any flight risk could be mitigated, a conclusion with which the Court agreed during proceedings on June 7, 2021. No new facts have developed which undermine this in any way. Rather, the letters submitted to the Court reinforce the conclusion that Scott's ties to the community and his family are strong, and he can be trusted to appear in court.[1]

### IV. Scott Berkett Should be Granted Bail Under the Bail Reform Act

As the Ninth Circuit states in *United States v. Motamedi*, 767 F.2d 1403 (9th Cir. 1985): "[F]ederal law has traditionally provided that a person arrested for a noncapital offense shall be admitted to bail. . . Only in rare circumstances should release be denied. . . . Doubts regarding the propriety of release should be resolved in favor of the defendant." (Citations omitted). This case does not present the rare circumstances that might warrant detention.

The Bail Reform Act of 1984 mandates release of a defendant facing trial under the least restrictive condition or combination of conditions that will reasonably assure the appearance of the person as required. *United States v.*

---

[1] Scott's parents confirm that his passport is lost. This could be addressed with the routinely-used Declaration Re: Passport (CR-37), or even by ordering the submission of a DS-64 (Report of Lost or Stolen Passport) to the Department of State. *See* https://travel.state.gov/content/travel/en/passports/have-passport/lost-stolen.html.

*Honeyman*, 470 F.2d 473, 474-75. (9th Cir. 1972). The Fifth and Eighth Amendment prohibitions of deprivation of liberty without due process and of excessive bail require careful review of pretrial detention orders to ensure that the statutory mandate is respected. *Motamedi*, 767 F.2d at 1405.

The Court shall, in determining whether there are conditions of release that will reasonably ensure the appearance of the person as required, "take into account the available information concerning: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for a Federal, State or local law, and (4) the nature and seriousness of danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).

The prosecution has the burden of proof of the risk of danger to the community by "clear and convincing evidence." 18 U.S.C. § 3142(f). This is contrasted with the burden of proof on the issue of flight, which is by a preponderance of the evidence. *United States v Gebro*, 948 F. 2d 1118, 1121 (9th Cir. 1991); *Motamedi*, 767 F. 2d at 1406.

Although the Court may consider the nature and circumstances of the offense charged, the Court does not decide guilt or innocence at the bail hearing. The weight of evidence against the defendant is also a factor to be considered, *but* it is the "least important" of the various factors. *Motamedi*, 767 F.2d at 1408. Finally, a defendant cannot be detained as dangerous under Section 3142(e) unless a finding is

made that *no* release conditions "will reasonably assure . . . the safety of the community."

Here, the prosecution relies almost exclusively on the "least important" of the factors supporting release – the alleged weight of the evidence, and nature and circumstances of the offense charged. A murder-for-hire charge alone does not preclude release on bond. *See, e.g., United States v. Mata*, 14-mj-2412 (S.D. Fla.) (defendant charged with helping drug smugglers and orchestrating a murder-for-hire plot released on $500,000 appearance bond, with electronic monitoring); *United States v. Layman*, 17-mj-301 (W.D. Okl.) (defendant charged with attempting to hire hitman to poison spouse with ricin; search of home revealed ingredients and instructions on making ricin; released on $50,000 unsecured appearance bond with conditions including electronic monitoring, mental health counseling and victim anti-contact conditions). The charge does not even shift the burden to the defense in the instant proceedings.

The prosecution also does not acknowledge that there never was any potential risk of harm to the alleged victim or anyone else in this case because the purported internet hitmen were scammers.[2] Somebody with any degree of internet sophistication – as the prosecution has depicted Scott – would have known the

---

[2] This contrasts with at least two recent cases in this District involving actual very serious danger, and even death, and in which pretrial release was granted. *See United States v. McCormick*, 20-CR-346(A)-DMG (10/21/20) (defendant charged with conspiracy and distributing oxycodone laced with fentanyl and LSD to civilians and U.S. Marines, **one of whom died** of an overdose, and who was also charged with possessing a firearm to further drug trafficking; released on a secured bond, with conditions including home confinement/monitoring); *United States v. Younggren*, 21-mj-3329 (7/22/21) (defendant arrested trying to get through security at the Roybal Building employee parking lot in full body armor, with knives, magazines loaded with 565 rounds of live ammunition, a loaded 45 semi-automatic, and two loaded rifles; USAO withdrew detention request and agreed to defendant's release on an unsecured $50,000 appearance bond with home confinement/monitoring, and sibling as his custodian).

9

venture was a scam given the widespread publicity about the operation of these hokey organizations on the so-called 'dark net' or 'dark web.' *See, e.g*, Popper, Nathaniel, "Can You Really Hire a Hit Man on the Dark Web?," *The New York Times*, March 4, 2020 ("Experts and law enforcers who have studied these sites — almost all of them on the so-called dark web or dark net — say they are scams. There has not been a known murder attributed to any of them.").³

Nor could Scott pose any conceivable risk to the alleged victim if released to home confinement, and in his parents' custody. She resides in Idaho or Arizona, as alleged in the Complaint. The prosecution's conjecture that she would somehow be at risk upon Scott's release is not the "clear and convincing evidence" of dangerousness that must be shown to support detention. *See United States v.*

---

³ Even the actual commission of violent acts – which is *not* alleged here – and sophisticated advance planning, do not alone justify pretrial detention under the Bail Reform Act. This is recently evinced by dozens of pretrial releases granted to January 6, 2021 U.S. Capitol rioters, whose actions arguably placed our entire nation at risk. *See, e.g.*, *United States v. Leffingwell*, 21-cr-5-ABJ (release on personal recognizance to third party custodian for defendant charged with multiple violent felonies who repeatedly assaulted officer and breached line of officers attempting to keep out intruders); *United States v. Miller*, 21-cr-75-RDM (limited home confinement for defendant charged with multiple violent felonies who discharged fire extinguisher at officers and used crowd barrier fence to scale Capitol walls); *United States v. Powell*, 21-cr-179-RCL (personal recognizance with electronic monitoring despite presumption of detention for defendant who used a battering ram to break window of Capitol, climbed in and out, used bullhorn to direct others inside with apparent detailed knowledge of floor plan, and exhorted others to destroy property); *United States v. Capsel*, 21-mj-122-RMM (personal recognizance for defendant captured on video assaulting National Guardsmen attempting to hold boundary, and who desisted only when pepper sprayed); *United States v. Biggs*, 21-cr-175-TJK (personal recognize for Proud Boy member who posted plans on social media before attack, was at front of crowd who first breached and entered Capitol, and communicated with other Proud Boys via walkie-talkie during riot); *United States v. DeCarlo/Ochs*, 21-cr-73-BAH (detention not requested for Proud Boys who planned and fundraised for riot, posted obstructionist agenda on social media, and defaced Capitol building with words, "Murder the Media").

*Salerno*, 481 U.S. 739, 751 (1987) (prosecution must prove by clear and convincing evidence that defendant presents threat of danger to any person or the community).

Finally, the prosecution's reliance on Scott's acknowledged mental health issues does not support detention because it has made no showing (let alone presented clear and convincing evidence) that those issues cannot effectively be addressed through mental health counseling, another routinely-imposed condition of pretrial release.

Release on the alternate conditions recited by Pretrial Services is appropriate here. Scott is 24 years old and has no prior criminal record or history of violence, or any of the other bellwethers for problems under supervision. He can reside with his parents, who have committed to cooperating with Pretrial Services and to acting as custodians. Any potential dangerousness could be mitigated by imposing home confinement and electronic monitoring, including the commonplace conditions precluding internet use and monitoring Wi-Fi access in the home for any violations.

## V. Scott Berkett Has a Kidney Disease That Places Him at Serious Risk From Covid 19 in Custody.

As reflected in the letter of Scott's physician, Dr. Eric Curcio, Scott's kidney condition makes him particularly susceptible to the adverse effects of contracting Covid-19. CR 34, at p. 11. Conditions of pretrial confinement create the ideal environment for the transmission of this dangerous and highly contagious disease, as evinced by the *repeated* break-outs of Covid-19 at the MDC-LA (and other custodial facilities) notwithstanding the BOP's Covid-19 response plan, and the MDC-LA's efforts to mitigate the danger. Although he has been vaccinated (but not received a booster), Scott's medical condition places him at heightened risk from a break-through infection or contracting the Delta variant while in custody. The longer he remains in custody, the greater the danger.

The Bail Act specifically states that the Court can consider the defendant's physical condition in deciding whether to grant bail. The defense requests the Court consider this additional ground for release.

**VI.   The Motion for Detention is Unsound on Legal Grounds Alone**

The motion for detention in this case is infirm on legal grounds alone. Specifically, the statutory provision on which the motion is based is unconstitutionally vague.

The prosecution moved for detention here on the ground that it is entitled to a detention hearing under 18 U.S.C. § 3142(f) because the charged statute, murder-for-hire 18 U.S.C. § 1958(a), is "a crime of violence (as defined by 18 U.S.C. § 3156(a)(4))." *See* CR 6 [Gov't Notice of Request for Detention of Defendant Scott Quinn Berkett], at p. 3. Section 3156(a)(4) defines a "crime of violence" as "(A) an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person . . . of another; or (B) any other offense that is a felony that, by its nature, involves a substantial risk that physical force against the person . . . of another may be used in the course of committing the offense."

Murder-for-hire does not require as an element the use/attempted/threatened use of force.[4] Accordingly, the prosecution's motion necessarily must rely on the definition of a "crime of violence" set forth in Section 3156(a)(4)(B).

Language identical to Section 3156(a)(4)(B) has been held unconstitutional in the Supreme Court's watershed decisions in *Johnson v. United States*, __ U.S. __, 135 S. Ct. 2551 (2015) (invalidating a similar residual clause defining a "violent

---

[4] The elements Section 1958 do not require that force be used, force be attempted, a person be threatened with the use of force, or that any injury result. The statute does not criminalize attempted or actual murder-for-hire, but instead the "travel in interstate ... commerce" or "[u]se [of] the mail or any facility of interstate ... commerce," where such travel or such use are coupled with the requisite intent that a murder be committed in exchange for something of value.

12

felony" under the 1984 Armed Career Criminal Act), *Sessions v. Dimaya*, __U.S. __, 138 S. Ct. 1204, 1211 (1918) (following *Johnson* in invalidating residual clause of 18 U.S.C. § 16(b) defining of a "crime of violence" to include "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."), and *United States v. Davis*, __ U.S. __, 139 S. Ct. 2319 (2019) (invalidating as unconstitutionally vague residual clause of definition of violent felony in federal statute imposing mandatory minimum sentences based on using, carrying, or possessing a firearm in connection with a crime of violence).

Relying on Section 3156(a)(4)(B)'s definition of "crime of violence" to permit the prosecution to seek detention here would involve what the Supreme Court in *Dimaya* described as the "two features" that "conspired to make ACCA's residual clause unconstitutionally vague" in *Johnson*. *Dimaya*, 138 S. Ct. at 1216. Specifically, it would require this Court to "to picture the kind of conduct that the crime involves in the ordinary case, and to judge whether that abstraction presents some not-well-specified-yet-sufficiently-large degree of risk."

Accordingly, this Court should deny the motion for detention on legal grounds alone. The motion is based on the allegation that the charged statute, murder-for-hire under 18 U.S.C. § 1958(a), is "a crime of violence (as defined by 18 U.S.C. § 3156(a)(4))." *See* CR 6, p. 3. However, Section 1958(a) is not a "crime of violence" under Section 3156(a)(4)(A) insofar as it does not have "as an element the use, attempted use, or threatened use of physical force against the person of another" (*United States v. Cordero*, 973 F.3d 603, 625-626 (6th Cir. 2020) (sentencing purposes); *United States v. Bowman*, 873 F.3d 1035, 1042 (8th Cir. 2017) (ACCA)). The identical language to the alternate definition of a "crime of violence" in Section 3156(a)(4)(B) ("a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of

committing the offense") is unconstitutionally vague under *Johnson, Dimaya* and *Davis*. The same conclusion is warranted here.

Finally, *Davis* resoundingly rejects employing "a case-specific approach that would look at the defendant's actual conduct in the predicate crime" to avoid dooming constitutionally vague statutes. *Davis*, 139 S. Ct. at 2325-2336). The Second Circuit appears to be alone in upholding Section 3156(a)(4)(B) against a vagueness challenge since *Davis*. *See United States v. Watkins*, 940 F.3d 152 (2d Cir. 2019), *cert. denied*, 140 S. Ct. 2584 (2020). However, even if this Court were to adopt such an approach, the detention motion should be dismissed. The alleged hit man operation was a scam, and an undercover agent induced the events leading to Scott's arrest. There never was *any* risk to the alleged victim or anyone else, let alone the requisite "substantial risk that physical force" would be used against another.

## CONCLUSION

Where, as here, the government has failed to overcome the Bail Reform Act's presumption against pretrial detention, release is appropriate. For the reasons set forth above, the defense respectfully asks the Court to grant bail in this case.

Dated: August 26, 2021            Respectfully submitted,

LAW OFFICES OF EVAN A. JENNESS

By: /s/ *Evan A. Jenness*
      EVAN A. JENNESS

TARLOW & BERK

By: /s/ *Blair Berk*
      BLAIR BERK

Attorneys for Defendant
Scott Berkett