EVAN A. JENNESS (SBN 136822)
LAW OFFICES OF EVAN A. JENNESS
777 South Figueroa Street, Ste. 3800
Los Angeles, California 90017
Tel.: (213) 630-5088
Fax: (213) 683-1225
Email:  evan@jennesslaw.com

BLAIR BERK (SBN 159087)
TARLOW & BERK
9119 Sunset Boulevard
Los Angeles, California 90069
Tel.: (310) 278-2111
Fax: (310) 550-7055
Email:  blairberk@tarlowberk.com

Attorneys for Defendant
Scott Berkett

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,      ) | Case No. 21-cr-292-MCS (jc) |
| ) | |
| Plaintiff,      ) | MOTION FOR RECONSIDERATION |
| ) | OF ORDER DENYING MOTION FOR |
| v.      ) | PRETRIAL RELEASE [CR 44] |
| ) | |
| SCOTT BERKETT,      ) | Date:  To be set. |
| ) | Courtroom:  Roybal - 750 |
| Defendant.      ) | Judge:  Hon. Jacqueline Chooljian |
| ) | |

1

Scott Berkett, through counsel, respectfully requests reconsideration of the Court's Order Denying Defendant's Application to Reconsider Order Denying Pretrial Release [CR 44], on the ground that it reflects an error of law.

Dated:  September 2, 2021                Respectfully submitted,

LAW OFFICES OF EVAN A. JENNESS


By:  /s/ *Evan A. Jenness*
      EVAN A. JENNESS

TARLOW & BERK


By:  /s/ *Blair Berk*
      BLAIR BERK

2

# MEMORANDUM

After conducting a hearing on August 31, 2021, the Court detained Scott Berkett based on a finding of dangerousness alone.  CR 44.  In reaching this conclusion, the Court indicated that 18 U.S.C. § 3142(f) concerns the holding of a detention *hearing*, not detention.  In other words, that 3142(f) limits only when a detention hearing may be held, but *not* the substantive grounds on which detention itself could be based.  Thus, the Court found that because the hearing was convened on the grounds of alleged flight risk and dangerousness, dangerousness alone was sufficient to justify detention, even though the charged offense is not a crime of violence or other enumerated crime in Section 3142(f), and the Court found flight risk could be sufficiently addressed through conditions of release.

The defense respectfully requests reconsideration on the grounds of legal error.[1]

In the course of reaching the preceding conclusion, the Court briefly recessed proceedings to review *United States v. Twine*, 344 F.3d 987 (9th Cir. 2003) (*per curiam*), *reh'g en banc denied*, 362 F.3d 1163 (2004).  Defense counsel had cited *Twine* in stating that dangerousness alone would not support detention because this case involves neither a crime of violence nor an offense enumerated in Section 3142(f), and the Court had already found that flight risk could be sufficiently addressed.  The limited time available did not permit the Court to review other cases recited by the defense on this point, which was not briefed in writing.

---

[1]    Although not expressly authorized by the Federal Rules of Criminal Procedure, reconsideration motions are permitted.  *See, e.g., United States v. Martin*, 226 F.3d 1042, 1047 n. 7 (9th Cr. 2000) ("motions for reconsideration may be filed in criminal cases"); *United States v. Hector*, 368 F. Supp. 2d 1060, 1063 (C.D. Cal. 2005) (motion to reconsider order denying suppression), *rev'd on other grounds*, 474 F.3d 1150 (9th Cir. 20007); *see also* Fed. R. Crim. P. 57(b) ("Procedure Where There is No Controlling Law… A judge may regulate practice in any manner consistent with federal law, these rules, and the local rules of the district").

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The reasoning adopted by the Court during August 31 proceedings was advanced by prosecutors, and this issue fully briefed by all parties, in *United States v. Nwabueze*, 10-cr-411-MMM (FFM).  In a detailed ruling, the District Court therein held that (1) flight risk could be sufficiently addressed through conditions of release, and (2) dangerousness alone could not support detention as a matter of law because none of the circumstances outlined in Section 3142(f) was present.

The defense attaches hereto a copy of the District Court's Order in *Nwabueze*, and incorporates its analysis at pp. 8-11.  In light of the recited authorities, the defense respectfully requests the Court reconsider its Order.

Dated:  September 2, 2021

Respectfully submitted,

LAW OFFICES OF EVAN A. JENNESS

By:   /s/ *Evan A. Jenness*
        EVAN A. JENNESS

TARLOW & BERK

By:   /s/ *Blair Berk*
        BLAIR BERK

Attorneys for Defendant

4

EXHIBIT A

E-Filed: 06.28.10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CASE NO. CR 10-00411 MMM |
| Plaintiff, | ) |
| vs. | ) ORDER GRANTING DEFENDANT'S |
| | ) APPLICATION FOR REVIEW OF |
| SAMUEL NWABUEZE, | ) MAGISTRATE JUDGE'S DETENTION |
| Defendant. | ) ORDER |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

Defendant Samuel Ifeanyi Nwabueze is charged with one count of conspiracy to use counterfeit access devices in violation of 18 U.S.C. § 1029(b)(2) and one count of fraudulent activity in connection with an unauthorized access device in violation of § 1029(a)(2).[1]

On April 12, 2010, Judge Frederick Mumm denied bond and ordered Nwabueze detained.[2]

_____

[1]Indictment, Docket No. 10 (Apr. 23, 2010).

[2]Order of Detention, Docket No. 6 (Apr. 12, 2010).

On June 7, 2010, Nwabueze filed a motion for review of Judge Mumm's detention order.[3]  The government opposed the motion on June 10, 2010.[4]

## I.  FACTUAL BACKGROUND

The indictment alleges that Nwabueze and Chike Jefe Ngezelonye requested that financial institutions, including American Express Travel Related Service Inc ("AmEx"), Discover Financial Service ("Discover"), and Charles Schwab & Co. ("Schwab"), send unauthorized access devices for victims holding credit card and other accounts at those institutions.[5]  Nwabueze and Ngezelonye allegedly used the unauthorized access devices to make purchases and withdraw cash.[6]  The indictment charges that between September 18, 2008 and January 24, 2010, defendants received and/or used twelve credit cards in connection with the scheme.[7]

On March 18, 2010, the government filed a criminal complaint.[8]  The complaint described an account takeover ("ATO") identity theft credit card scheme pursuant to which defendants took over preexisting accounts, and then instructed the bank to issue a replacement card and personal identification number ("PIN"), and to mail the card and PIN to an address controlled by defendants rather than the true cardholder's address.[9]  The complaint alleged that the credit cards

---

[3]Application to the Criminal Duty Judge for Review of Magistrate Judge's Bail Order, Docket No. 29 (June 7, 2010); Memorandum of Points and Authorities re: Legal Standard for Detention Under 18 U.S.C. § 3142 ("Motion"), Docket No. 30 (June 9, 2010).  See also Reply to Government's Response to  Defendant's Application for Review Magistrate Judge's Bail Order ("Reply"), Docket No. 33 (June 16, 2010).

[4]Government's Response to Defendant's Application for Review Magistrate Judge's Bail Order ("Opp."), Docket No. 31 (June 10, 2010).

[5]Indictment, ¶ 1.

[6]*Id.*, ¶ 2.

[7]*Id.*

[8]Complaint, Docket No. 1 (Mar. 18, 2010).

[9]*Id.*, ¶ 6.

were then used to make purchases or transfer funds to other accounts.[10]   It also alleged a fraudulent application ("FRAPP") scheme, pursuant to which defendants applied for and opened fraudulent credit card accounts, using the identity of another individual without that individual's knowledge or consent.[11]

Nwabueze appeared before Judge Frederick Mumm on April 12, 2010.  In evaluating whether it was appropriate to release Nwabueze on bond, Judge Mumm reviewed the report of the Pretrial Services Department.  Although initially in dispute, it was eventually determined that defendant is a U.S. citizen who was born in Houston, Texas, but who lived in Nigeria from the time he was one year old until he was fifteen.[12]   At age fifteen, defendant moved to this judicial district, living in North Hollywood, Sherman Oaks, and Canoga Park.  Defendant currently resides in Tarzana, California.  Defendant reported that he has lived in the Central District for ten years.

Defendant's father and brother live in Tarzana.  Defendant's mother lives in Nigeria. Defendant has one sister, who resides in Miami, Florida, and another sister, who resides in Michigan.  Defendant's brother stated that a third sister lives in Nigeria.

Defendant's brother, Henry Nwabueze,[13] is willing to sign an appearance bond without justification in any amount the court deems necessary, as is defendant's girlfriend, Jenna Getchell. Defendant's mother is willing to post a cash deposit of $5,000.  Defendant's father is willing to sign a $100,000 appearance bond without justification.  Defendant earns approximately $4,000

---

[10]*Id.*

[11]*Id.*, ¶ 7.

[12]At the court's order, the defendant's father has provided to te court a copy of the defendant's Texas birth certificate.  (Declaration of Samuel Nwabueze, Sr. ("Nwabueze Decl."), Docket No. 35 (June 25, 2010), Exh. 1).)

[13]Following the hearing on June 21, 2010, defendant's father clarified that defendant has only one brother whose name is Henry and whose nickname is Zubby.  Defense counsel, pretrial services, and the court had been under the impression that defendant had two brothers. Defendant's father states in his declaration that he would have raised this matter at the hearing, but feared that interrupting would have been impolite.  (*Id.*, ¶ 4.)

per month running a business he owns; he receives $3,000 per month from his mother.

Defendant was convicted in 2004 of refusing to leave a campus, writing a check with insufficient funds, and driving under the influence of alcohol.  In 2005, defendant was convicted of driving under the influence of alcohol, taking a vehicle without the owner's consent, and driving with a suspended license.  In May 2006, defendant was convicted of obtaining money or property by false pretenses and obtaining credit using another's identification, both felonies.  In August 2006, defendant was convicted of showing false identification to a peace officer and disorderly conduct.  In 2007, he was convicted of obtaining money or property by false pretenses and sentenced to 32 months imprisonment.  The following year – 2008 – defendant was convicted of forgery and sentenced to sixteen months imprisonment.  Defendant is presently on parole for the 2007 conviction, with a discharge date of July 12, 2012.

The investigating agent advised Pretrial Services that defendant had caused $159,000 in loss to approximately fifty accounts.

In its report, Pretrial Services balanced the fact that defendant had willing sureties, some family ties to California, and employment against the fact that he has ties to Nigeria, he previously resided in and has traveled to Nigeria, he has a history of warrants and an immigration detainer, his background is only partially verified, and he is charged with significant offenses.  Pretrial Services concluded that no combination of conditions would reasonably assure defendant's appearance.  it also considered defendant's extensive criminal history, including his convictions for driving under the influence, and concluded that defendant posed a danger to the community.

Judge Mumm therefore ordered defendant detained, concluding that there was a serious risk that he would flee, and that no condition or combination of conditions could reasonably assure his appearance and/or the safety of persons and the community.  In his written factual findings, Judge Mumm referenced the Pretrial Services report.

On May 21, 2010, defendant sought reconsideration of the detention order, citing the fact that his mother in Nigeria was willing to post $5,000 in cash and his father was willing to sign a

$100,000 affidavit of surety.[14]  At a hearing on May 27, 2010, defense counsel advised Judge Mumm that defendant was born in the United States; he acknowledged "[t]hat [that fact might] well have to be proven to the immigration authorities but [that proof would be required] before they release[d] him. . . ."  As a result, counsel argued, immigration status would not be "a block . . . to . . . bond. . . ."[15]  On May 27, 2010, Judge Mumm declined to reconsider the detention order.  Defense counsel noted that defendant had previously been on bail in state criminal proceedings and had made all of his court appearances; this included the case in which defendant was eventually sentenced to 32 months.[16]  Counsel conceded that defendant had "had some problems with probation violations and parole violations," but asserted that the problems did not involved "failing to report [or] not showing up for court."[17]  As a result, he argued, the parole and probation violations did not suggest a risk of flight, and were best addressed through electronic monitory and strict reporting.

The government countered that although defendant told Pretrial Services he had financial resources, he had not offered to post any of his property as bond.  Rather, it argued that defendants' parents  – one of whom resided abroad and one of whom lived part-time in Nigeria – were the only sources of collateral.  Although the government conceded that "the defendant . . . appear[ed] to have been born in the United States," it asserted that he had spent the first fifteen years of his life in a foreign country, and that given his U.S. citizenship, he might well have access to a U.S. passport.  Defense counsel contended that the government overstated defendant's foreign ties, noting that defendant had lived in the United States for ten years, since he was fifteen.

Judge Mumm stated:

---

[14]Application for Review/Reconsideration of Order Setting Conditions of Release/Detention and Request for Hearing ("Reconsideration Motion"), Docket No. 25 (May 21, 2010).

[15]Transcript of Hearing, May 27, 2010 ("Transcript"), at 2:20–27.

[16]*Id.* at 3:24–26, 4:1.

[17]*Id.* at 4:2–10.

"I'm going to deny the motion for reconsideration based on my finding that, even though the defendant has a history of showing up for trial, the record shows an inability to comply with conditions. He was on parole at the time of the alleged violation here and under these circumstances I just find that the bail resources that have been offered are inadequate. So, I'm denying the motion for reconsideration."[18]

## II. DISCUSSION

### A. Standard Governing Review of a Magistrate Judge Order Setting Bail

Rule 59(a) of the Federal Rules of Criminal Procedure provides:

"A district judge may refer to a magistrate judge for determination any matter that does not dispose of a charge or defense. The magistrate judge must promptly conduct the required proceedings and, when appropriate, enter on the record an oral or written order stating the determination. A party may serve and file objections to the order within 10 days after being served with a copy of a written order or after the oral order is made on the record, or at some other time the court sets. The district judge must consider timely objections and modify or set aside any part of the order that is contrary to law or clearly erroneous. Failure to object in accordance with this rule waives a party's right to review."

The issuance of release and detention orders, as well as the setting or modification of bail, are matters referred to magistrate judges under Local Rule 46-1. See CA CD CR L.R. 46-1 ("Except as set forth in these rules, any Magistrate Judge has the authority to fix or modify bail . . . , and conduct detention hearings and issue release and detention orders . . . , including with respect to bail or detention recommended or set in another district in a case arising in this or another district"). See *United States v. Tooze*, 236 F.R.D.442, 444 (D. Ariz. 2006) (concluding that a local rule promulgated by district judges that assigned pretrial detention hearings to magistrate

---

[18]*Id.* at 10:6–15.

judges was a referral of detention matters within the meaning of Rule 59(a)).

In *United States v. Koenig*, 912 F.2d 1190 (9th Cir. 1990), the Ninth Circuit considered the standard a district court should use in reviewing the bail order of a magistrate judge.[19] It concluded that the "structure of the Bail Reform Act . . . suggest[ed] that the district court's review should be of a more plenary nature than that of a court of appeals. A magistrate judge can issue a detention order only after a hearing 'held immediately upon the person's first appearance' unless a continuance is sought." *Id.* at 1192 (quoting 18 U.S.C. § 3142(f)). "Because of the promptness contemplated by the Act," the Ninth Circuit stated, "'magistrate[ judges] traditionally play a preliminary role in these determinations.'" *Id.* (quoting *United States v. Hurtado*, 779 F.2d 1467, 1481 (11th Cir. 1985)). In assessing what standard of review should be used, the court found significant the fact that the district court was reviewing a "motion to revoke or amend, not . . . an appeal, and [also] that [the motion was being] made in the court of original jurisdiction." *Id.* (citing 18 U.S.C. § 3145(b) (governing review of a detention order) and *United States v. Thibodeaux*, 663 F.2d 520, 522 (5th Cir. 1981) ("Because the district court was the court having original jurisdiction of the felonies charged, the district judge was not exercising an appellate jurisdiction")).

The Ninth Circuit also cited decisions from two other circuits with approval. It quoted the following language from the Fifth Circuit's decision in *Thibodeaux*:

"The statutory scheme adopted in [the Bail Reform Act] confers a responsibility on the district court to reconsider the conditions of release fixed by another judicial officer . . . as unfettered as it would be if the district court were considering whether to amend its own action. It is not constrained to look for abuse of discretion or to defer to the judgment of the prior judicial officer. These latter considerations [are] pertinent when, under [the Bail Reform Act], the district court's action is called before the court of appeals." *Koenig*, 912 F.2d at 1191 (quoting *Thibodeaux*, 663 F.2d at 522 (omission original)).

_____

[19]The Ninth Circuit has not revisited the question since.

The court also cited the Third Circuit's decision in *United States v. Delker*, 757 F.2d 1390 (3d Cir. 1985). There, a magistrate judge denied the government's motion for pretrial detention and set bail at $250,000. The government filed a motion seeking to have the district judge amend the magistrate judge's order. *Id.* at 1391. The district court reviewed the magistrate judge's order *de novo* and conducted an evidentiary hearing regarding factual issues the magistrate judge had already decided. *Id.* at 1393. The Third Circuit affirmed. See *Koenig*, 912 F.2d at 1192 ("[T]he Third Circuit . . . held it proper for a district court to [hold] an evidentiary hearing, on the same facts that were before the magistrate [judge], in determining whether to revoke or amend [the] . . . . release order. . . . A primary reason for the court's decision was that, under the prior statute, *Thibodeaux* and its progeny supported a practice of *de novo* review").

Applying *Koenig* to the present case, the court

"is not required to start over . . . , and proceed as if [Judge Mumm's] decision and findings did not exist. . . . [Rather,] [i]t should review the evidence before [Judge Mumm] and make its own independent determination whether [his] findings are correct, with no deference. If the performance of that function makes it necessary or desirable for the district judge to hold additional evidentiary hearings, [she] may do so, and [her] power to do so is not limited to occasions when evidence is offered that was not presented to the magistrate [judge]. . . . The point is that the district court is to make its own 'de novo' determination of facts, whether different from or an adoption of the findings of the magistrate [judge]. It also follows . . . that the ultimate determination of the propriety of detention is . . . to be decided without deference to [Judge Mumm's] ultimate conclusion." *Koenig*, 912 F.2d at 1193.

**B.      Whether the Court May Consider Danger to the Community**

As a threshold matter, the court considers a legal issue raised by the government in its opposition. Judge Mumm recessed the hearing on defendant's application for reconsideration to review *United States v. Twine*, 344 F.3d 987 (9th Cir. 2003) (per curiam), and the cases cited therein. Citing that case, he concluded that the only relevant factor in evaluating whether to detain a defendant was flight risk. The government urges the court to find that this decision was legally

1   erroneous and to detain defendant based on danger as well as risk of flight.

2   In *Twine*, the district court detained a defendant without bail on the sole basis that he posed

3   a danger to the community being a felon in possession of a firearm pursuant to 18 U.S.C. §

4   922(g)(1).  *Id.* at 987.  The Ninth Circuit concluded:

5       "We are not persuaded that the Bail Reform Act authorizes pretrial detention

6       without bail based solely on a finding of dangerousness.  This interpretation of the

7       Act would render meaningless 18 U.S.C. § 3142(f)(1) and (2).  Our interpretation

8       is in accord with our sister circuits who have ruled on this issue.  See *United States*

9       *v. Byrd*, 969 F.2d 106 (5th Cir. 1992); *United States v. Ploof*, 851 F.2d 7 (1st Cir.

10      1988); *United States v. Himler*, 797 F.2d 156 (3d Cir. 1986)."  *Twine*, 344 F.3d

11      at 987.

12  The Ninth Circuit concluded that, because the charge of being a felon in possession of a firearm

13  was not a crime of violence, the predicate to evaluating dangerousness under § 3142(f) was not

14  triggered.  *Id.* at 987-88.

15      The government's interpretation of § 3142(f) contradicts *Twine*'s clear holding.  The

16  government asserts that § 3142(f) concerns the holding of a detention *hearing*, not detention.  See

17  18 U.S.C § 3142(f) (when the circumstances set forth in § 3142(f)(1) and (f)(2) are present, "[t]he

18  judicial officer shall hold a hearing to determine whether any condition or combination of

19  conditions set forth in subsection (c) of this section will reasonably assure the appearance of such

20  person as required and the safety of any other person and the community").  Based on its

21  interpretation, the government argues that, although the court cannot conduct a detention *hearing*

22  on the basis of danger to the community unless the circumstances outlined in § 3142(f) are present,

23  it can *detain* notwithstanding the fact that none of those circumstances is present, i.e., the

24  defendant is not charged with one of the delineated federal crimes.  In other words, the

25  government asserts that it can request a detention hearing based solely on flight risk, and when

26  the hearing is conducted, argue both flight risk and danger to the community.

27      This interpretation of the statute is belied by the fact that neither *Twine* nor the circuit

28  decisions cited therein used such qualifying language.  As noted, the *Twine* court was "not

persuaded that the Bail Reform Act authorize[d] pretrial *detention* without bail based solely on a finding of dangerousness." *Twine*, 344 F.3d at 987 (emphasis supplied). Because the *Twine* decision is short, occupying only half a page in the Federal Reporter, the court considers relevant the three cases cited by *Twine* as support for its decision. In *Himler*, the Third Circuit held that it was "reasonable to interpret the statute as authorizing detention only upon proof of a likelihood of flight, a threatened obstruction of justice or a danger of recidivism in one or more of the crimes actually specified by the bail statute" in § 3142(f)(1). The court concluded that because the case did "not involve any of the offenses specified in subsection (f)(1) . . . the statute [did] not authorize the detention of the defendant based on danger to the community." *Himler*, 797 F.2d at 160.

In *Ploof*, the First Circuit followed the Third Circuit, concluding that:

"where detention is based on dangerousness grounds, it can be ordered only in cases involving one of the circumstances set forth in § 3142(f)(1). As the Third Circuit pointed out, the Bail Reform Act created a new type of detention – preventive detention – to be invoked only under certain conditions. Insofar as in the present case there is no longer any contention that any of the subsection (f)(1) conditions were met, pre-trial detention solely on the ground of dangerousness to another person or to the community is not authorized." *Ploof*, 851 F.2d at 11–12.

Similarly in *Byrd*, the Fifth Circuit concluded that "[d]etention can be ordered . . . only 'in a case that involves' one of the six circumstances listed in [subsection] (f), and in which the judicial officer finds, after a hearing, that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." *Byrd*, 969 F.2d at 109.

The two Ninth Circuit decisions the government cites, both of which predate *Twine*, are not to the contrary. In *United States v. Motamedi*, 767 F.2d 1403 (9th Cir. 1984), the government moved for detention based solely on flight risk, not dangerousness. *Id.* at 404. Describing the Bail Reform Act, the court stated that the Act "permit[ted] the pretrial detention of a defendant without bail where it is demonstrated either that there is a risk of flight or no assurance that release

is consistent with the safety of another person or the community." *Id.* at 1406. Elsewhere, however, the court emphasized that it had considered flight risk only; it held that "[b]ecause the Government has failed to establish by a preponderance of the evidence that Motamedi poses a flight risk, the motion for reconsideration [had to] be denied." *Id.* at 1404. In *United States v. Walker*, 808 F.2d 1309 (9th Cir. 1986), defendant had been charged with conspiracy to distribute cocaine, bringing the case within the category of cases delineated in § 3142(f)(1). See *Walker*, 808 F.2d at 1310; 18 U.S.C. § 3142(f)(1)(C) (including drug offenses for which the maximum term of imprisonment is ten years or more). Consequently, the government's suggestion that in order to support defendant's position, *Twine* must be interpreted as overruling *Motamedi* and *Walker* is unsupported.

Defendant's interpretation of *Twine*, moreover, is supported by the statute's legislative history. The Senate Report accompanying the Bail Reform Act stated that "the requisite circumstances for invoking a detention hearing in effect serve to limit the types of cases in which detention may be ordered prior to trial," S. REP. NO. 225, 98th Cong., 1st Sess. at 20 (1983), 1984 U.S.C.C.A.N. 3182, 3203. As a consequence, the government's attempt to sever the prerequisites for a detention hearing from the prerequisites for detention is unavailing. See also *id.* at 21 (noting that "the seriousness of the offenses described in subsection (f)(1)(A) through (C) coupled with the government motion is a sufficient basis for requiring an inquiry into whether detention may be necessary to protect the community from the danger that may be posed by a defendant charged with one of these crimes").

The court therefore agrees with Judge Mumm and defendant that *Twine* stands for the proposition that a court may only order pretrial detention under the Bail Reform Act based on the danger a defendant poses to the community if the defendant is charged with a crime described in § 3142(f)(1).[20]

---

[20]The government's argument that "Congress cannot have intended that an individual who poses a grave danger to the community – e.g., an individual with an unregistered silencer under his bed and hundreds of bodies buried in his back yard, or a massive arsenal of chemical weapons in his basement – cannot be detained so long as he is not a risk of flight – e.g., has lived in the

1   ## C.    Whether Defendant Should Be Detained Due to Flight Risk

2   Under the Bail Reform Act, release on conditions is the general rule, not the exception.

3   The Act "requires the release of a person facing trial under the least restrictive condition or

4   combination of conditions that will reasonably assure the appearance of the person as required and

5   the safety of the community." *Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991).  "On a motion for

6   pretrial detention, the government bears the burden of showing by a preponderance of the

7   evidence that the defendant poses a flight risk." *Id.* (citing *United States v. Motamedi*, 767 F.2d

8   1403, 1406-07 (9th Cir. 1985)).

9   Section 3142(g) of the Bail Reform Act specifies the factors that must be considered in

10  determining whether there are conditions of release that will reasonably assure the appearance of

11  defendant at trial.  18 U.S.C. § 3142(g).  These include "(1) the nature and circumstances of the

12  offense charged, including whether the offense [is a crime of violence, a Federal crime of

13  terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive

14  device]; (2) the weight of the evidence against the person; [and] (3) the history and characteristics

15  of the person, including the person's character, physical and mental condition, family and

16  community ties, employment, financial resources, past criminal conduct, and history relating to

17  drug or alcohol abuse."  *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008) (citing

18  *Motamedi*, 767 F.2d at 1407).  "Of these factors, the weight of the evidence is the least important,

19

20  ─────────────────────

21  community all his life and has no criminal history" – is unavailing.  (Opp. at 8.)  As respects the possibility of "hundreds of bodies," the court may detain for any "offense for which the maximum sentence is life imprisonment or death," 18 U.S.C. § 3142(f)(1)(B).

22  Among these is murder or conspiracy.  As respects a "massive arsenal of chemical weapons,"

23  possession of chemical weapons is among the crimes that permits pretrial detention.  *Id.*,

24  § 3142(f)(1)(A) (permitting detention in a case that involves "an offense listed in section

25  2332b(g)(5)(B)"); *id.*, § 2332b(g)(5)(B) (listing crimes, including possession of chemical weapons in violation of 18 U.S.C. § 229).  As respects an unregistered silencer, criminalized in 26 U.S.C.

26  §§ 5861(d) and 5871, see *United States v. Leniear*, 574 F.3d 668, 670 (9th Cir. 2009), the court

27  agrees, that like the felon in possession of a firearm in *Twine*, a defendant charged with possession of an unregistered silencer could not be detained based on a finding of dangerousness to the

28  community.  The government's argument on this score is best addressed to Congress as opposed to the court.

and the statute neither requires nor permits a pretrial determination of guilt." *Gebro*, 948 F.2d at 1121. "If after a hearing the court determines that no condition or combination of conditions will reasonably assure the appearance of the person, the court is to order the defendant's detention." *United States v. Townsend*, 897 F.2d 989, 993 (9th Cir. 1990) (citing 18 U.S.C. § 3142(e)).

The government argues that defendant is a flight risk because he has spent a significant portion of his pre-adult life in Nigeria, because his mother lives in Nigeria and his father lives part-time in Nigeria,[18] because defendant faces a term of imprisonment if he is convicted,[19] and because the bail resources defendant offers are insufficient in that he does not proffer any of his own resources. The government has apparently abandoned the argument it advanced before Judge Mumm that defendant's history of parole violations and/or probation revocations supports a finding that he is a flight risk. Defendant challenged taking this consideration into account, given that it is specifically identified as a relevant factor in § 3142(g)(3).[20]

Defendant correctly notes that while the subsection mandates consideration of the fact that defendant is presently on probation or parole, it does not require that the court consider prior

---

[18]After defendant's father, who was present at the hearing before Judge Mumm, heard the government assert that he frequently travels to Nigeria, defendant's father telephoned defense counsel to inform him that the last time he had been to Nigeria was in 2003. (Reply at 6.)

[19]The government does not suggest a particular term of imprisonment based on the Sentencing Guidelines; it argues merely that "any term of incarceration is serious and could serve as a potential motivation to avoid prosecution." (Opp. at 10.) Defense counsel asserts, without support, that the advisory guideline range would be 1.5 to 3 years. He emphasizes that defendant has faced similar sentences in state court, has been released on bond, and has not missed court appearances. (Reply at 6–7.)

[20]"The judicial officer shall . . . take into account the available information concerning . . . the history and characteristics of the person, including . . . the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and . . . whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law." 18 U.S.C. § 3142(g)(3).

1  parole or probation violations.   In its opposition, the government does not argue that Judge

2  Mumm's order should be upheld on that basis; rather, it asserts that the court should uphold the

3  decision based on Judge Mumm's observation that defendant is a flight risk and that the bail

4  resources that have been offered are inadequate.   The government does not cite any authority for

5  the proposition that prior parole violations or probation revocations are relevant.

6       The court notes, however, that § 3142(g) mandates that the court consider "the history and

7  characteristics of the person, *including*" the factors enumerated in the statute.   As the Supreme

8  Court recently held "use of the word 'include' can signal that the list that follows is meant to be

9  illustrative rather than exhaustive."   *Samantar v. Yousuf*, ___ U.S. __, 2010 WL 2160785, *6

10 (June 1, 2010) (citing 2A N. Singer & J. Singer, SUTHERLAND STATUTORY CONSTRUCTION

11 § 47.7, p. 305 (7th ed. 2007) ("[T]he word 'includes' is usually a term of enlargement, and not

12 of limitation" (some internal quotation marks omitted)).   Here, the court concludes, reviewing the

13 totality of defendant's history, that his past parole and probation violations are relevant in

14 evaluating the risk of flight.   The court reaches this conclusion because, although there is no

15 indication that the violations themselves involve failures to appear, they clearly implicate

16 defendant's ability to comply with court orders, including orders to appear.   Moreover, the

17 Pretrial Services report is vague as to the nature of the parole and/or probation violations, and the

18 government has provided no information supplementing the Pretrial Services report in this regard.

19 The report states that on February 6, 2007, a warrant issued for a parole violation, and that on

20 February 21, 2007 a warrant issued for a probation violation.   The record contains no information

21 regarding the disposition of the warrants, nor any information that would support a finding that

22 the violations bear on the risk that defendant might flee.   Pretrial Services merely contacted

23 defendant's state parole agent, who stated that defendant was not "satisfactory under supervision"

24 and "served approximately 120 days for a parole violation."

25      Based on the paucity of information in the record, the court cannot find that the parole and

26 probation violations, *per se*, weigh heavily in favor of a finding that there is a risk defendant will

27 flee.   If defendant had violated parole, for example, by failing a drug test, this would be a serious

28 offense that might lead to revocation in the state or federal system.   See, e.g., 18 U.S.C.

§ 3148(b)(1)(B) ("The judicial officer shall enter an order of revocation and detention if, after a hearing, the judicial officer . . . finds that there is . . . clear and convincing evidence that the person has violated any other condition of release"). It would not necessarily, however, bear on the risk that defendant would flee. Because the court has no information regarding defendant's February 2007 parole and/or probation violations, it discounts this factor as too vague to support detention. See *Motamedi*, 767 F.2d at 1405 ("Doubts regarding the propriety of release should be resolved in favor of the defendant").

The remaining factors the government cites do not support detention. Defendant is a United States citizen. While the government suggests that defendant may be a dual citizen, defendant has not been to Nigeria for a decade – indeed, at no time since his adolescence. Although defendant has family in Nigeria – his mother and one sister – the remainder of his family reside in the United States and his father, brother, and girlfriend reside in the Central District. Defendant has lived here since age fifteen. Defendant's father has submitted a declaration stating that defendant is a U.S. and not a Nigerian citizen.[21] Defendant has provided his employer's declaration, who states that he will employ defendant at his music studio if defendant is released on bond, and pay him $15 per hour for at least forty hours per week.[22] The court therefore concludes that defendant has more significant ties to the Central District than he does to Nigeria.

The government has expressed concern regarding the adequacy of the bail resources defendant proffers, most particularly the $100,000 appearance bond without justification that defendant's father proposes to post. Although the government initially believed that defendant's father was not a U.S. citizen and was in possession of a Nigerian passport, it now appears established that defendant's father is a U.S. citizen who has not been to Nigeria in seven years. Thus, it does not appear likely, as the government earlier intimated, that it would be difficult to collect on any bond the father signed. The $100,000 bond the father offers is in addition to a $5,000 cash deposit to be provided by defendant's mother, an appearance bond without

---

[21]Nwabueze Decl., ¶ 3.

[22]Declaration of Kenneth Uche ("Uche Decl."), Docket No. 35 (June 25, 2010).

justification for "any amount the Court deems necessary" offered by defendant's brother, Henry, and defendant's girlfriend. This last bond was offered subsequent to the proceedings before Judge Mumm. Both defendant's father and his girlfriend are earning between $40,000 and $50,000 per year; neither, therefore, is judgment-proof.

The government also argues that the fact that defendant is facing "a[ ] term of incarceration" justifies detention. Adopting such a view, however, would run contrary to congressional intent that "[o]nly in rare circumstances should release be denied." *Motamedi*, 767 F.2d at 1405. There is no doubt that the conduct defendant is charged with committing is serious. Defendant's alleged fraud resulted in losses of approximately $159,000. Moreover, it appears that the defendant has been convicted of crimes in state court on multiple times, including certain charges that imply recidivism respecting fraud crimes.

Although the government has not proffered the evidence on which it will rely at trial, "the weight of the evidence is the least important" factor in assessing whether pretrial release is appropriate. *Gebro*, 948 F.2d at 1121. The criminal complaint provides little detail regarding the evidence the government will present, as it consists largely of allegations justifying a search warrant. Thus, this factor does not weigh against pretrial release.

In sum, the court finds, based in part on information not available to Judge Mumm, that Judge Mumm's finding that there is no condition or combination of conditions that will reasonably assure the defendant's appearance must be vacated. Of most significance are defendant's ties to this judicial district and the not insignificant surety resources offered. In particular, the $100,000 surety offered by defendant's father, who earns $40,000 to $50,000 per year, is significant. The sureties offered by defendant's brother and his girlfriend, and the cash deposit offered by his mother, bolster the court's finding. The court credits defense counsel's argument that defendant has faced sentences similar to the one he may receive in this case, has been released on bond, and has appeared in court consistently. Although defendant's recidivism and the seriousness of his alleged fraud weigh against release, doubts concerning pretrial detention must be resolved in a defendant's favor. The court therefore concludes that there are a combination of conditions that will reasonably assure the defendant's appearance.

The court therefore orders defendant's release upon the following conditions. Defendant's mother shall deposit $5,000 in cash. Defendant shall post appearance bonds totaling $125,000 with an affidavit of surety without justification (form CR-4). Given their local residency and employment, the bonds may be posted by defendant's father and girlfriend. Defendant's brother Henry must post an appearance bond in the sum of $5,000 with an affidavit of surety without justification (form CR-4).

Defendant shall submit to pretrial supervision. Defendant has submitted a declaration stating that he is unable to located his U.S. passport, which was lost years ago, that he will surrender his passport if it is located and that he will not apply for the issuance of a new passport. Defendant's travel is restricted to this judicial district. The defendant shall not enter the premises of any airport, seaport, railroad, or bus terminal which permits exit from the continental United States without court permission, shall reside as approved by pretrial services and not relocate without pretrial services' permission. The defendant shall maintain or actively seek employment and provide proof to pretrial services; avoid all contact, directly or indirectly, with any person who is or who may become a victim or potential witness in the subject investigation or prosecution, including but not limited to the co-defendants; not possess any firearms, ammunition, destructive devices, or other dangerous weapons; and not use or possess any identification other than in his own legal or true name, and the defendant shall not use or possess illegal drugs. The defendant must participate in a home detention program and abide by all requirements of the program, which must include electronic monitoring or other location verification system. The defendant shall be restricted to his residence at all times except for employment, education, religious services, medical treatment, attorney visits, court-ordered obligations, or other activities as pre-approved by pretrial services. The defendant shall pay all or part of the cost of the program based upon his ability to pay as determined by pretrial services.

17

### III. CONCLUSION

Defendant's application for review of Judge Mumm's detention order is granted. The detention order is vacated and defendant may be released under the conditions set forth in this order.

DATED: June 28, 2010

_Margaret M. Morrow_

MARGARET M. MORROW
UNITED STATES DISTRICT JUDGE