1 │ TRACY L. WILKISON
Acting United States Attorney
2 │ SCOTT M. GARRINGER
Assistant United States Attorney
3 │ Chief, Criminal Division
JOSEPH D. AXELRAD (Cal. Bar No. 274580)
4 │ Assistant United States Attorney
Violent & Organized Crime Section
5 │     1300 United States Courthouse
    312 N. Spring St.
6 │     Los Angeles, California 90012
    Telephone: (213) 894-7964
7 │     Facsimile: (213) 894-0121
    E-mail:   joseph.axelrad@usdoj.gov
8 │
Attorneys for Plaintiff
9 │ UNITED STATES OF AMERICA

10 │                UNITED STATES DISTRICT COURT

11 │           FOR THE CENTRAL DISTRICT OF CALIFORNIA

12 │ UNITED STATES OF AMERICA,        No. CR 21-00292-MCS (JCx)

13 │       Plaintiff,        GOVERNMENT'S OPPOSITION TO
                      DEFENDANT'S MOTION FOR
14 │           v.            RECONSIDERATION

15 │ SCOTT QUINN BERKETT,

16 │       Defendant.

17 │

18 │     Plaintiff United States of America, by and through its counsel

19 │ of record, the Acting United States Attorney for the Central District

20 │ of California and Assistant United States Attorneys Joseph D. Axelrad

21 │ hereby files its Opposition to Defendant's Motion for Reconsideration

22 │ (Dkt. 45.)

23 │ //

24 │ //

25 │

26 │

27 │

28 │

1      This Opposition is based upon the attached memorandum of points

2  and authorities, the files and records in this case, and such further

3  evidence and argument as the Court may permit.

4   Dated: September 13, 2021       Respectfully submitted,

5                              TRACY L. WILKISON
                            Acting United States Attorney

6

7                              SCOTT M. GARRINGER
                            Assistant United States Attorney
                            Chief, Criminal Division

8

9                              */s/ Joseph Axelrad*
                            JOSEPH D. AXELRAD
                            Assistant United States Attorney

10

11                             Attorneys for Plaintiff
                            UNITED STATES OF AMERICA

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.    INTRODUCTION**

3         Defendant again seeks release on bond, despite three detention

4    hearings at which the Court has consistently determined defendant

5    inappropriate for bond.  Now, defendant seeks reconsideration of the

6    Court's most recent detention order *without any changed circumstances*

7    *or new facts*.  Rather, defendant asks the Court to reconsider caselaw

8    that was specifically considered during the most hearing, namely, the

9    Ninth Circuit's decision in United States v. Twine, 344 F.3d 987 (9th

10   Cir. 2003).  Citing a non-binding district court decision

11   interpreting Twine, the defendant again asks that Court to reconsider

12   its consistent finding that defendant be detained pending trial.  The

13   Court should decline to do so as its detention order is legally sound

14   and based on sufficient factual findings.

15        Specifically, in cases where the government has demonstrated

16   that it is entitled to a detention hearing, the Bail Reform Act

17   permits the detention of an individual on the sole basis that the

18   individual poses a danger to the community.  A reading of Twine that

19   forecloses detention based on danger alone is contrary to the plain

20   language of the Bail Reform Act and long-standing Ninth Circuit

21   precedent.

22   **II.   LEGAL ANALYSIS**

23        The plain language of the Bail Reform Act and well-established

24   case authority permits the detention of a defendant on the basis that

25   he or she is *either* a danger to the community or a risk of flight or

26   both.  Nevertheless, Twine has periodically caused some defendants to

27   argue (and some judges to hold) that a defendant may never be

28   detained pending trial based on danger alone.  In fact, as this Court

1  found, Twine makes no substantive changes in the law governing the

2  basis on which a defendant may be detained before trial, and instead

3  stands for the well-established and unremarkable proposition that the

4  government must first demonstrate that it is entitled to a detention

5  hearing before a defendant may be detained prior to trial.

6      Twine simply holds that in order to ultimately detain an

7  individual, the government must first demonstrate that it is entitled

8  to a detention hearing based on one of the grounds set forth in

9  § 3142(f).  Id. at 987 (describing district court's holding that

10 § 922(g)(1) is a crime of violence that triggers the [Bail Reform]

11 Act's express authority to hold the defendant without bail pending

12 trial after a hearing pursuant to 18 U.S.C. 3142(f)).  Once the

13 government makes a threshold showing that it is entitled to a

14 detention hearing, the court may then hold such a hearing and detain

15 the defendant if it finds that the defendant is a risk of flight or a

16 danger to the community.  See 18 U.S.C. 3142(c),(e),(f),(g).

17     The defendant in Twine was charged with being a felon in

18 possession of a firearm.  Unable to demonstrate that defendant

19 presented a flight risk, the government sought a detention hearing on

20 two grounds: (1) the felon-in-possession charge was a crime of

21 violence and (2) defendant was a danger to the community.  The

22 defendant was detained on the sole ground that he posed a danger to

23 the community.  In a brief, *per curiam* opinion reversing the

24 detention order, the court observed, "We are not persuaded that the

25 Bail Reform Act authorizes pretrial detention without bail based

26 solely on a finding of dangerousness.  This interpretation of the act

27 would render meaningless 18 U.S.C. 3142(f)(1) and (2)."  Id.  The

28 Ninth Circuit also held that because the felon-in-possession charge

1  was not a crime of violence, the government was not entitled to a

2  detention hearing on that ground and therefore the court could not

3  detain defendant on that basis.  Twine, 344 F.3d at 988.

4      The context of Twine and the analysis and citations contained in

5  the opinion demonstrate that the holding was limited to the issue of

6  whether the government had proved that it was entitled to a detention

7  hearing.  The court's exceptionally brief analysis focused

8  exclusively on the detention hearing provisions of 18 U.S.C. § 3142;

9  the court noted its concern that the detention hearing provisions

10  (subsections (f)(1) and (f)(2)) would be rendered meaningless if an

11  individual were detained on dangerousness alone, and it concluded

12  that because the crime at issue was not a crime of violence, the

13  government could not trigger the [Bail Reform] Act's express

14  authority to hold the defendant without bail after a hearing pursuant

15  to 3142(f).  Twine, 344 F.3d at 987.

16      Twine did not call into question the express statutory authority

17  to detain an individual after a hearing if the court finds the

18  individual a danger to the community under 18 U.S.C. 3142(c) and (e).

19  Instead, Twine's holding is focused on the issue of a detention

20  hearing, and correctly holds that a person cannot be detained as a

21  danger to the community unless the government is entitled to a

22  detention hearing on one of the grounds enumerated in 18 U.S.C.

23  3142(f).

24      The alternative reading of Twine – that no defendant, no matter

25  how dangerous, may ever be detained on the basis of danger alone – is

26  not only contrary to the plain language of the statute and Ninth

27  Circuit case authority, but is facially unreasonable as well.

28

1    As a matter of statutory construction, 3142(c) and (e) provide

2   that a court "shall detain a defendant if no condition or

3   combinations of conditions will reasonably assure the appearance of

4   the person as required and the safety of any other person and the

5   community."  Only a disjunctive construction [of Section 3142(c) and

6   (e)] is sensible, because under both subsections, the judicial

7   officer must be satisfied that both the defendant's appearance and

8   the community's safety are assured.  The converse must also be true:

9   if the judicial officer can conceive of no conditions which will

10  reasonably guarantee either the person's appearance or the

11  community's safety, conditional release must be denied.  United

12  States v. Kouyoumdjian, 601 F. Supp. 1506, 1509 (C.D. Cal. 1985)

13  (Rymer, J.) (emphasis in original).  Subsection 3142(f)(2)(A) also

14  authorizes a detention hearing based only where there is serious risk

15  that a defendant will flee, and "[i]t is illogical to have that power

16  without the correlative ability at the hearing to determine that

17  detention is indicated on the sole basis of a finding that no

18  conditions will assure appearance."  Id.  Likewise, subsection

19  3142(f)(2)(B) authorizes a detention hearing when there is a serious

20  risk that defendant might obstruct justice or intimidate a witness,

21  "a power that would make no sense if, upon hearing, the judicial

22  officer were unable to detain based solely on a finding that no

23  conditions will assure safety."  Id.  Section 3142(f) also

24  establishes distinct burdens for detaining someone based on flight

25  and dangerousness, suggesting that they are two independent findings,

26  either of which warrants detention.  Id.  Finally, the legislative

27  history of the Bail Reform Act indicates that "requiring findings on

28  both appearance and safety before detention could be ordered, would

1  defeat the overriding purpose of the Bail Reform legislation." Id.

2  at 1510.

3     The legislative history of § 3142 bears this interpretation out.

4  The Senate Judiciary report on the Bail Reform Act states, "*[T]he*

5  *Committee has determined that danger to the community is as valid a*

6  *consideration in the pretrial release decision as is the presently*

7  *permitted consideration of risk of flight.  Thus, subsection (a),*

8  *like the other provisions of section 3142, places the consideration*

9  *of defendant dangerousness on an equal footing with the consideration*

10 *of appearance*." See Report of the Committee on the Judiciary, United

11 States Senate on S. 215, Rept. No. 96 147 (May 25, 1983) (emphasis

12 added.)

13    As a matter of precedent, the Ninth Circuit has on at least two

14 occasions held or assumed that § 3142 permits pre-trial detention

15 based on dangerousness alone.  In United States v. Motamedi, the

16 Ninth Circuit expressly stated that the Bail Reform Act "permits the

17 pretrial detention of a defendant without bail where it is

18 demonstrated either that there is a risk of flight or no assurance

19 that release is consistent with the safety of another person or the

20 community."  767 F.2d 1403, 1406 (9th Cir. 1985).  Later, the Ninth

21 Circuit affirmed the constitutionality of pretrial detention based on

22 dangerousness alone in United States v. Walker, 808 F.2d 1309, 1311

23 (9th Cir. 1986).  The implicit holding of Walker, then, is that

24 pretrial detention based on dangerousness is authorized by § 3142.

25    In order to hold that pretrial detention based on dangerousness

26 is not authorized under § 3142, Twine would have to overrule the

27 express holding of Motamedi and the implicit holding of Walker,

28 something only an *en banc* panel could accomplish.  Cerrato v. San

1  Francisco Cmty. Coll. Dist., 26 F.3d 968, 972 n.15 (9th Cir. 1994).

2  At the very least, Motamedi and Walker appear to conflict with a

3  reading of Twine that forbids pretrial detention on dangerousness

4  alone.  Where intra-circuit precedent is in conflict, courts must

5  attempt to reconcile it.  Watts v. Frito-Lay, Inc., 978 F.2d 1093,

6  1108 (9th Cir. 1992).  Motamedi, Walker and Twine can be reconciled

7  by adopting a rational interpretation of Twine and rejecting the

8  notion that Twine holds that no defendant may be detained based on

9  dangerousness alone.

10      More broadly, the government submits that Congress cannot have

11  intended that an individual who poses a grave danger to the community

12  e.g., an individual with a deranged determination to see a single

13  specific person murdered, cannot be detained so long as he is not a

14  risk of flight.  Such an interpretation is simply inconsistent with

15  the goals of the Bail Reform Act and common sense.

16      And, of course, these concerns are specifically implicated in

17  the instant case where defendant is able to post a significant bond,

18  but remains a clear, present, and specific threat to the safety of

19  the community and his intended murder victim.[1]  As the government has

20  repeatedly argued, and the Court has repeatedly found, defendant

21  remains a serious danger to the community.[2]

22

23

24  _____

25      [1]  In support of his improper motion for reconsideration,
    defendant cites United States v. Nwabueze, a factually inapposite,
26  unpublished, and non-binding district court decision.  See CR No. 10-
    0041-MMM.  Notably, the defendant in Nwabueze did not attempt to
27  secure the murder of his ex girlfriend or display a singular,
    obsessive focus on a particular person's death.
28      [2]  The government also continues to believe defendant poses a
    serious risk of flight.

1   **III. CONCLUSION**

2       For the foregoing reasons, based on the totality of the facts

3   presented, the government respectfully requests that this Court deny

4   defendant's motion for reconsideration and order defendant remain

5   detained pending trial.