TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
JOSEPH D. AXELRAD (Cal. Bar No. 274580)
Assistant United States Attorney
Violent & Organized Crime Section
    1300 United States Courthouse
    312 N. Spring St.
    Los Angeles, California 90012
    Telephone: (213) 894-7964
    Facsimile: (213) 894-0121
    E-mail:    joseph.axelrad@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 21-00292-MCS (JCx) |
|---|---|
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION; EXHIBTS |
| v. | |
| SCOTT QUINN BERKETT, | |
| Defendant. | |

    Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorneys Joseph D. Axelrad hereby files its Opposition to Defendant's Motion for Reconsideration (Dkt. 45.)

//

//

This Opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: September 24, 2021

Respectfully submitted,

TRACY L. WILKISON
Acting United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

*/s/ Joseph Axelrad*
JOSEPH D. AXELRAD
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

### MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Over the last several weeks, defendant Scott Quinn BERKETT ("defendant") has sought to engineer a complex scheme to obstruct justice and fabricate evidence – all without the use of a single computer or digital device.  Specifically, defendant has sought to employ other inmates at the Metropolitan Detention Center to help him destroy evidence, fabricate exculpatory evidence, and obstruct justice, even going so far as to provide hyper-detailed notes and instructions for his putative co-conspirator.  (See Exhibit A [Defendant's Note].)  In at least one instance, defendant promised $10,000 to an individual in exchange for their help obstructing justice and fabricating evidence.

Defendant's conduct undermines each of the contentions his argument for bond rests upon.  Defendant has access to extraordinary wealth, is undeterred and unthwarted by a lack of access to computers or digital devices, has no regard for the rule of law, has no respect for the Court's rules, and is willing to engage in additional criminal conduct while under indictment and in custody.  While defendant is indisputably a serious danger to the community, this latest conduct shows he is also a serious risk of flight.

Of course, this conduct by defendant represents changed circumstances or new facts and the Court should order defendant remain detained pending trial based on both danger to the community *and* risk of flight.  Indeed, that is precisely what defendant's conduct requires.

## II.   RELEVANT FACTS[1]

During approximately the first week of September, while housed at the Metropolitan Detention Center ("MDC"), defendant engaged in a series of conversations with a cooperating witness ("CW-1").[2]  During these conversations, defendant asked CW-1 to help him fabricate evidence.  Specifically, defendant provided CW-1 with a detailed set of instructions outlining the various steps needed to help defendant develop false evidence suggesting he had been framed for the instant offense, destroying evidence, and obstructing justice.  (Exhibit A.)  Within the note, defendant instructs CW-1 to contact the "Internet Killers" (the name of the Dark Web group with whom he believed he had contracted the murder of victim R.E.) and "*cancel any contracts*." (Id.)  Next, defendant instructed CW-1 to send a message to the Dark Web group stating:

> "'The person I wanted framed is behind bars, but now my
> client has stiffed me.  Let them know that he's not the
> right guy' or something to that effect."

(Id.)  Defendant further instructed CW-1 as follows:

> "[E]mail should be something to the effect of: 'I'm sorry
> to inform so late on this, but ~~the defendant~~ [sic] I was
> hired to frame Mr. Berkett for the allegations in early

---

[1]   The government does not recite here the extensive factual and procedural background previously included in the government's related filings in opposition to defendant's bond.  (See Dkt. Nos. 40, 46.) The government incorporates these filings by reference.

[2]   CW-1 has been charged with a fraud related crime and has previously been convicted of, among other things, various fraud related offenses.  CW-1 is cooperating with law enforcement for consideration at sentencing and, specifically, with the hope of a reduced sentence.  The government first met with CW-1 on September 22, 2021.  A report of this interview has been provided to defendant as well as a copy of the note defendant provided to CW-1.

April, framing him as Ula77 after stealing around 12000 in BTC before April 29, [illegible] and after April 22.' and citing not being paid as the reason for the admission." (Id.)

As part of the note, defendant also provided CW-1 with login information that appears to relate to accessing the Dark Web ["Tor Browser"] as well as a username and password information – all so that CW-1 could communicate with the Dark Web group, the "Internet Killers," as Ula77 – defendant's Dark Web identity.  Finally, defendant provided CW-1 with instructions on how to surreptitiously communicate to defendant that his obstruction of justice, destruction of evidence, and fabrication of false exculpatory evidence had been completed, detailing various code words to use when communicating that would signify success, *e.g.* "spice," "spiced," "spices," and "spicy."  (Id.)  In exchange for CW-1's assistance, defendant promised CW-1 $10,000.

**III. ARGUMENT**

The Bail Reform Act of 1984 (the "Act") directs courts to impose those conditions of pretrial release that "will reasonably assure the appearance of the person as required and the safety of any other person and the community," 18 U.S.C. § 3142(c)(1)(B), and permits pretrial detention of a defendant without bail where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," § 3142(e).  A finding that pretrial release will not ensure the appearance of the defendant need only be supported by a preponderance of the evidence.  United States v. Motamedi, 767 F.2d 1403, 1406 (9th Cir. 1985).

Here, defendant's dangerousness is beyond dispute.  Indeed, the Court has repeatedly found defendant to present a danger to the community.  (See Dkt. 17, 44.)  If released, defendant is likely to harm the intended target of his murder for hire plot, victim R.E.  But this most recent conduct confirms the government's longstanding concern:  defendant also presents a serious risk of non-appearance.  The Court should order defendant detained pending trial based on its prior findings of dangerousness and that defendant is a risk of non-appearance for the following four reasons:

First, defendant's scheme to fabricate false exculpatory evidence and, therefore, obstruct justice, all while detained pending trial, warrants detention.  United States v. Hollingberry, No. 2003058MJ001PHXMTM, 2020 WL 2771773, at *3 (D. Ariz. May 28, 2020), aff'd, No. 20-10183, 2020 WL 5237342 (9th Cir. July 23, 2020) ("Under 18 U.S.C. § 3142(f)(2)(B), detention is available in any case where there is 'a serious risk that [the defendant] will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror.'"); United States v. Greenoge, No. 21CR1115-H, 2021 WL 3856519, at *2 (S.D. Cal. Aug. 30, 2021) (finding defendant's "making fictitious checks, destroying and concealing evidence" to weight in favor of detention).  In a vacuum, this type of conduct is serious and concerning.  In the context of defendant's repeated attempts to seek release on bond, it is particularly fraught and requires defendant remain detained pending trial.

Second, defendant's conduct while in custody is telling of how little respect he has for the rule of law and, particularly relevant to the question of bond, how little regard he has for the Court's

rules.  See United States v. Wero, No. CR09-8056-PCT-DGC, 2009 WL
1797853, at *3 (D. Ariz. June 24, 2009) ("[T]he Court is concerned
that a defendant who so routinely disregards court orders... will
fail to appear in a matter where he might face a significant prison
sentence.")  Based on this conduct, the Court can have no faith that
defendant would appear for future Court appearances or abide by any
term of pretrial supervision.  Moreover, this conduct belies
defendant's argument that the posting of a significant surety (here,
his parent's home) would somehow mitigate a risk of non-appearance.
Defendant does not appear deterred by the charges in the indictment
or that fact that he is in custody.  There is no reason to believe
that the threat of the government forfeiting his parent's home would
be any greater deterrence.

Third, the alleged conduct also includes offers of extraordinary
cash payments to CW-1 for their cooperation in his scheme, despite
defendant's repeated assurances that he has no access to his own, or
his family's, extensive resources.  Of course, defendant's lack of
regard for the Court's rules and access to extraordinary resources,
coupled with his desire to obstruct justice and destroy evidence,
present its own risk of flight.

And fourth, defendant has repeatedly placed great weight on his
proposed terms of pretrial supervision, namely, that access to the
internet or other digital devices would be limited while residing at
his parent's home.  As is clear from Exhibit A, defendant was able to
engage in this scheme to obstruct justice, fabricate evidence, and
destroy evidence all without the use of a computer or digital device.
Defendant's determination and singular focus now appears to extend

beyond harming victim R.E. to obstructing law enforcement's investigation into his conduct.

Based on this new evidence, the Court should order defendant detained based on danger to the community and risk of flight.

**IV.   CONCLUSION**

For the foregoing reasons, based on the totality of the facts presented, the government respectfully requests that this Court deny defendant's motion for reconsideration and order defendant remain detained pending trial based on a finding of dangerousness and risk of flight.