E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
KATHY YU (Cal. Bar No. 268210)
Assistant United States Attorney
Violent and Organized Crime Section
    1300 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-2431
    E-mail:   kathy.yu@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 21-292-MCS |
|---|---|
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR SENTENCE REDUCTION PURSUANT TO AMENDMENT 821 TO THE UNITED STATES SENTENCING GUIDELINES (DKT. 83) |
| v. | |
| SCOTT QUINN BERKETT, | |
| Defendant. | |

    Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Kathy Yu, hereby files its Opposition to Defendant's Motion for Sentence Reduction Pursuant to Amendment 821 to the United States Sentencing Guidelines (Dkt. 83).

    The government's opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and any other evidence or argument that the Court may wish to consider in connection with defendant's requested relief.

Dated: January 31, 2024              Respectfully submitted,

                                     E. MARTIN ESTRADA
                                     United States Attorney

                                     MACK E. JENKINS
                                     Assistant United States Attorney
                                     Chief, Criminal Division


                                          /s/
                                     _____
                                     KATHY YU
                                     Assistant United States Attorney

                                     Attorneys for Plaintiff
                                     UNITED STATES OF AMERICA

## I. INTRODUCTION

Defendant, convicted of soliciting a hitman on the Dark Web to kill his ex-girlfriend, now requests relief from this Court pursuant to Amendment 821 to the United States Sentencing Guidelines for resentencing. (Motion for Sentence Reduction (Dkt. 83.).) He claims that, with the application of Amendment 821, his "offense level would be lowered by 2 levels and he would have qualified for probation in lieu of imprisonment." (Mot. at 1.)

Defendant, however, cannot meet his burden to warrant resentencing relief. First, his offense of conviction involved "violence" and "credible threats of violence" – barring him from relief. Second, even if the Court were to lower his offense level two levels, his original sentence of 60 months imprisonment is still lower than the new Guidelines level, separately barring him from relief.

Based on the record, defendant's motion should be denied.

## II. BACKGROUND OF THE CASE

### A. Factual Background

As set forth in the Plea Agreement (Dkt. 57), defendant admitted the following facts:

In approximately April 2021, defendant solicited and paid for murder-for-hire services via a website on the Dark Web ("Dark Web Group") that purportedly offered murder-for-fire services, in order to have victim R.E. murdered. Specifically, using the username "Ula77," and via the internet, defendant provided the Dark Web Group with specific directions and details about his target victim R.E. As payment for R.E.'s murder, defendant sent the Dark Web Group Bitcoin payments totaling approximately $13,000.

In fact, the Dark Web Group does not provide murder-for-hire services, and instead, provided defendant's communications and other related information to law enforcement.

In May 2021, an undercover law enforcement officer contacted defendant while posing as the hitman defendant believed he had hired from the Dark Web Group.  On May 19, 2021, the undercover law enforcement sent defendant pictures of victim R.E. and defendant confirmed that R.E. was his intended victim and that defendant had made Bitcoin payments to obtain her murder.  Defendant further requested proof of R.E.'s successful murder.  Finally, defendant made an additional $1,000 payment to the undercover law enforcement officer via Western Union to obtain the murder of victim R.E.

### B. Guidelines Calculation

The Court adopted the parties' and the PSR's calculation of defendant's offense conduct calculations and criminal history.  The PSR concluded that the base offense level was 32 based on U.S.S.G. § 2E1.4, and the total offense level, after a three-level reduction for acceptance of responsibility, was 29 (PSR ¶¶ 19-28).  Coupled with a criminal history category of I (PSR ¶ 35), the Guidelines range was 87 to 108 months' imprisonment.  (PSR ¶ 79.)

### C. Sentencing Papers

Consistent with the parties' agreement, the government and defendant both requested a below-Guidelines sentence of 60 months' imprisonment.  (Plea Agreement at Paragraphs 2(h) and 3(d).)  The government further recommended a three-year period of supervised release (the maximum term available for this type of offense), a fine of $20,000, and a special assessment of $100.  (Dkt. 66.)  The government also filed, under seal, victim impact statements from the

victim, victim's mom, victim's dad, and victim's sister.  These letters described the permanent impact of defendant's attempt to have victim R.E. killed.  For example, victim R.E. wrote, "What the defendant has done to me will haunt me for the rest of my life" and "this is something I fear I'll never truly forget or recover from." She described how even daily tasks like taking out the trash or working the night shift could leave her paralyzed with angst, and her anxieties were exacerbated upon seeing someone who resembled the defendant or a passing glimpse of a California license plate.  (Ex. A at 1; Ex. D at 1.)

The family shared in the victim's feelings of helplessness and anxiety.  As the victim's mom explained to the Court: "There is a man in this world that wants my child dead.  A man that wants a picture of her corpse. If I word this too strongly, who's to say it won't anger him further.  He isn't going to be locked up forever. If he was bold enough to do this, what else is he capable of?"  (Ex. B at 1.) They recounted how the victim was before the offense – someone who had "a room full of stuffed animals, watches cartoons," "dots her I's with hearts," who was "always so kind to everyone" and "always thinking of others over herself."  (Ex. B at 1; Ex C. at 1.)  The family has had to watch their loved one be "destroyed and broken," with the knowledge that defendant "fully intended to take [the Victim] . . . without hesitation," and that "[t]he rest of her life will be filled with the constant fear that someone will kill her." (Ex C at 1.)  Nothing will "restore" the Victim to the way she was before she met the defendant.  (Ex. D at 1.)

       **D.**    **Sentencing Hearing**

At the sentencing hearing on September 12, 2022, the Court

acknowledged receipt of the various victim impact statements, heard argument from the parties, and ultimately imposed a term of 60 months' imprisonment, a three-year term of supervised release, and a special assessment of $100.

According to defendant, he has served approximately 30 months of his 60-month sentence. (Mot. at 1.)

**III. LEGAL STANDARD**

In Part B, Subpart 1 to Amendment 821 to the Sentencing Guidelines, the Sentencing Commission added what now appears in Section 4A1.1(c), providing a 2-offense-level reduction for many offenders who present zero criminal history points. The new provision states:

§ 4C1.1. Adjustment for Certain Zero-Point Offenders

(a) ADJUSTMENT.—If the defendant meets all of the following criteria:

(1) the defendant did not receive any criminal history points from Chapter Four, Part A;

(2) the defendant did not receive an adjustment under §3A1.4 (Terrorism);

(3) the defendant did not use violence or credible threats of violence in connection with the offense;

(4) the offense did not result in death or serious bodily injury;

(5) the instant offense of conviction is not a sex offense;

(6) the defendant did not personally cause substantial financial hardship;

(7) the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(8) the instant offense of conviction is not covered by §2H1.1 (Offenses Involving Individual Rights);

    (9) the defendant did not receive an adjustment under §3A1.1 (Hate Crime Motivation or Vulnerable Victim) or §3A1.5 (Serious Human Rights Offense); and

    (10) the defendant did not receive an adjustment under §3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848;

decrease the offense level determined under Chapters Two and Three by 2 levels.

On August 24, 2023, the Commission decreed that this change applies retroactively. The Commission further directed that a court granting relief may not order the release of a defendant to occur any earlier than February 1, 2024. See U.S.S.G. § 1B1.10(e)(2) (Nov. 1, 2023).

In Dillon v. United States, 560 U.S. 817 (2010), the Supreme Court addressed the process for application of a retroactive guideline amendment, emphasizing that Section 1B1.10 is binding. The Court declared: "Any reduction must be consistent with applicable policy statements issued by the Sentencing Commission." Id. at 821. The Court required district courts to follow a two-step approach:

    At step one, § 3582(c)(2) requires the court to follow the Commission's instructions in §1B1.10 to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized. Specifically, §1B1.10(b)(1) requires the court to begin by "determin[ing] the amended guideline range that would have been applicable to the defendant" had the relevant amendment been in effect at the time of the initial sentencing. "In making such determination, the court shall substitute only the amendments listed in subsection (c) for the corresponding guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected." Id.

    Consistent with the limited nature of § 3582(c)(2) proceedings, §1B1.10(b)(2) also confines the extent of the reduction authorized. Courts generally may "not reduce the

defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) . . . to a term that is less than the minimum of the amended guideline range" produced by the substitution. §1B1.10(b)(2)(A). . . .

At step two of the inquiry, § 3582(c)(2) instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case.

Dillon, 560 U.S. at 827

**IV. ARGUMENT**

    **A. Defendant Is Ineligible for Relief Under Amendment 821**

First, defendant is barred from relief because he used "violence or credible threats of violence in connection with the offense" under Section 4C1.1(a)(4). As defendant unambiguously admitted in the statement of facts set forth in the plea agreement, he engaged in the following acts, which constitute "violence or credible threats of violence":

- "Defendant solicited and paid for murder-for-hire services via a website on the Dark Web ("Dark Web Group") that purportedly offered murder-for-fire services, in order to have victim R.E. murdered."

- "Specifically, using the username 'Ula77,' and via the internet, defendant provided the Dark Web Group with specific directions and details about his target victim R.E."

- "On May 19, 2021, the undercover law enforcement sent defendant pictures of victim R.E. and defendant confirmed that R.E. was his intended victim and that defendant had

made Bitcoin payments to obtain her murder.  Defendant further requested proof of R.E.'s successful murder."

Plea Agreement at Paragraph 9.

By his own admissions in the plea agreement, defendant sought to have victim R.E. murdered, providing specific directions and details so the murder could be carried out, and even requesting proof of her death.  See generally United States v. Perez, 962 F.3d 420, 451 (9th Cir. 2020) (interpreting "credible threat to use violence" under U.S.S.G. 2D1.1(b)(2) to include a threat "to throw someone off the roof of a building").  Defendant was explicit and unambiguous, and schemed to avoid accountability for his violence.  See also Complaint at 10 ("I'd like it to look like an accident, but robbery gone wrong may work better.  So long as she is dead.  I'd also like for her phone to be retrieved and destroyed irreparably in the process."); id. ("I would like proof of her death sent to me."); id. at 15 (confirming "some kind of accident or robbery to have gone wrong" so that "it doesn't get traced"); id. at 16 (requesting a "picture of the corpse and a picture of [the victim's] tattoo . . . to verify" her identity).  Because defendant engaged in violence – in ordering the murder of the victim – he should be barred from relief under Amendment 821 to the Sentencing Guidelines.

Second, defendant is separately ineligible for relief because defendant received a sentence lower than if the Court were to apply Amendment 821 now.  Even assuming this provision would apply – despite defendant's violence – the advisory guideline range would be reduced from 87 months to 70 months (tied to a total offense level of 27).  Here, the sentence the Court imposed – 60 months' imprisonment – already falls below that range, and in this circumstances, no

further relief is permissible.  Section 1B1.10(b)(2)(A) bars relief: "Except as provided in subdivision (B) [related to substantial assistance], the court shall not reduce the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) and this policy statement to a term that is less than the minimum of the amended guideline range determined under subdivision (1) of this subsection," that is, the range produced by application of the retroactive guideline amendment. Dillon, 560 U.S. at 827 ("Courts generally may "not reduce the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) . . . to a term that is less than the minimum of the amended guideline range" produced by the substitution.") (citation and internal quotation marks omitted); United States v. D.M., 869 F.3d 1133, 1138 (9th Cir. 2017) (noting "prohibition against reducing a sentence below the minimum of the amended guideline range") (citation and internal quotation marks omitted).

**B. Defendant Is Not Entitled to Appointed Counsel**

Defendant also seeks the appointment of counsel (Mot. at 2), which the Court should deny.  A criminal defendant has no Sixth Amendment right to counsel in connection with a § 3582(c) motion. United States v. Townsend, 98 F.3d 510, 512-13 (9th Cir. 1996). Moreover, because defendant is categorically ineligible for relief under Amendment 821, representation will not help his case.  His request should be denied.

**V. CONCLUSION**

For the foregoing reasons, defendant's motion should be denied in its entirety.